## STATE v. AMERICAN RAILWAY EXPRESS COMPANY.[1]

April 17, 1931.

No. 28,391.

*Kellogg, Morgan, Chase, Carter & Headley,* for appellant.

*Henry N. Benson,* Attorney General, *James E. Markham,* Deputy Attorney General, and *W. K. Montague,* Assistant Attorney General, for the state.

[1] Reported in 236 N. W. 321.

LORING, J.

This is a suit by the state to recover from the express company certain gross earnings taxes based upon the business done by the company between points in Minnesota and the Canadian boundary line. The state had a judgment below, and the company has appealed therefrom.

The state taxes express companies' property at the rate of eight per cent on the gross earnings of those companies within the state. The assessment of express companies differs from that of railway companies. In the case of railway companies the assessment is based upon the business done within the state plus a proportionate share of interstate earnings based upon relative mileage. This was evidently considered to be an impractical method of assessing express companies on account of the numerous small shipments made by such companies; and therefore a higher rate was fixed, based upon a more limited amount of business, namely that business done by the express company within this state, including its proportion of gross receipts for business done "within this state in connection with other companies." G. S. 1923 (1 Mason, 1927) § 2262.

There is no question presented here about the state's power to assess the property of the express company upon such company's gross earnings, or to take into consideration in making such assessments the proportionate share of through business which 'is done in this state. The sole question is whether or not the statute as it exists applies to business originating in Minnesota but destined for points in Canada and turned over to Canadian express companies at Emerson and Fort Francis, respectively. The defendant company handles its express in through cars which run from the respective points of origin in Minnesota to Winnipeg. In both instances its messengers transfer possession of the express matter at Emerson and Fort Francis to the Canadian company, which then takes possession of it and transports it to its destination. At Emerson this transfer takes place about 1,500 feet north of the boundary line, and at Fort Francis about two and a half miles beyond the line, so that in each instance it takes place upon Cana-

dian territory. Therefore the defendant contends that the business is not done within the state and consequently does not come within the terms of the gross earnings statutes as applied to express companies.

With this contention we cannot agree. For all practical purposes the transfer takes place at the boundary line. It is a mere matter of convenience that it happens to be a few hundred feet on the Canadian side of that boundary. It would be a very technical construction of the statute to interpret it otherwise. It is conceded by the company that if the transfer took place at Noyes and at International Falls the earnings of the company on this business would be within the terms of the statute. In either case the business is interstate commerce, but it has been repeatedly held that the state may include the proportionate share of railway companies' earnings on through business or interstate commerce in assessing the tax on railway property by means of the gross earnings tax, so that the sole question is the proper interpretation of the Minnesota statute.

We believe that a common sense interpretation would include the business here under consideration as having been done within the state.

The judgment appealed from is affirmed.